HOLLAND vs. REED.

1. Only a person who has been in posseesion of land can maintain an action of forcible entry and detainer or of unlawful detainer.

2. The assignee or vendee of a landlord cannot maintain such action against the tenant.

## ERROR to Linn Circuit Court.

STRINGFELLOW, *for Plaintiff.*

The only question this case is, the right of a vendee of the landlord to maintain this action against the tenant. To sustain this right, reference is made to 2 Marshall, 204; 3 Marshall, 149; 2 Littell, 294; 1 Monroe, 127; 2 Dana, 245; 3 Dana, 67; 3 B. Monroe, 271.

CLARK, *for Defendant.*

The evidence rejected by the Circuit Court only proved a right in Holland to the possession of the premises, and did not in the least tend to prove that kind of possession in him authorizing this kind of proceeding. In the case of Mechan vs. Walsh, adm'r of Wilcox, reported in 6 Mo. R., 346, this position is clearly sustained. See Hatfield vs. Wallace, 7 Mo. R., 112; Stone vs. Malot, 7 Mo. R. 160; Moore vs. Agee, 7 Mo. R., 289; 6 Marshall, 494; 8 Mo. R., 278.

McBRIDE, J., *delivered the opinion of the Court.*

This was an action of unlawful detainer, brought by Holland against Reed, before a justice of the peace for Linn county, where he obtained judgment, from which the defendant appealed to the Circuit Court. In the Circuit Court, the plaintiff took a non-suit, with leave to move to set the same aside, which he did, but the court overruled his motion and entered judgment. He excepted to the opinion of the court, and has brought the case to this court by writ of error.

By the bill of exceptions, it appears that one John McClintock rented the premises, to recover which this action was brought, to the defendant, Reed, for the term of one year, ending on the 9th November, 1846. By the terms of the agreement between the parties, Reed was to pay $80 per year for the use of the property, the payments to be made quarterly, and was to be allowed for all necessary repairs done upon the houses, and, at the expiration of his term, to restore the possession of the property, in good repair.

On the agreement between the parties is endorsed, on the 28th July, 1846, a credit for the first three quarter's rent, amounting to $60—also the following assignment from McClintock to Holland:—"Nov. 16, 1846. I assign this article to John Holland and give him full power to collect and receive the last quarter's rent due on it. JOHN MCCLINTOCK."

The plaintiff then offered to prove by evidence that McClintock was in possession of the premises prior and up to the time of leasing to defendant; that defendant took possession and held under his lease until the termination thereof; that before the end of the defendant's lease, McClintock sold all his right and title in the premises to the plaintiffs, who, after the termination of the defendant's lease, and before the institution of this suit, made a demand in writing of the defendant for the possession, who refused to surrender the same to him. The court rejected the evidence.

The question arising on the record is, whether the plaintiff, who is the vendee of McClintock, can maintain this action against the defendant, who obtained possession of the premises under a lease and as tenant of the said McClintock, the vendor?

This proceeding is had under a statute of this State, entitled "An act concerning forcible entries and detainers," R. C. 1845, p. 511, the third section of which provides that "when any person shall willfully and without force hold over any lands, tenements, or other possessions, after the

termination of the time for which they were demised or let to him, or the person under whom he claims, or when any person wrongfully and without force, by disseizin, shall obtain and continue in possession of any lands, tenements or other possessions, and after demand made in writing for the deliverance of the possession thereof by the person hav- ing the legal right to such possession, his agent or attorney, shall refuse or neglect to quit such possession, such person shall be deemed guilty of an unlawful detainer." This section is a substantial copy of the third section of the act of 1835 upon the same subject, under which this court held, in the case of *Blount & Baker* vs. *Winright*, 7 Mo. R., 50, that "the act giving this action for a forcible detainer contemplates a case in which the plaintiff has once been in lawful possession, and in which de- fendant, or those under whom he claims, have peaceably obtained pos- session, and hold over after a demand made in writing." The foregoing view of the subject is further enforced in the case of *Hatfield* vs. *Wallace*, reported in the same volume, page 112. This was a case where Wal- lace's improvement on public lands was sold under execution, and Hat- field became the purchaser and instituted his action of forcible detainer to recover of Wallace the possession. The court held, that "in every case in which the action for a forcible detainer is given by this section, (the third) the person to whom the action is given is supposed to have been in possession of the premises, and the defendant to have come into the possession under him, either immediately or mediately. But it does not appear that Hatfield, the present plaintiff, ever has been in the pos- session of the premises sued for. He purchased them at sheriff's sale." See also the case of *Michau* vs. *Walsh*, adm'r, 6 Mo. R., 346, and *Hoff- stetter* vs. *Blatner*, 8 Mo. R., 276.

The construction given by this court to the statute in the foregoing cases, concludes the rights of the parties in the case now before us. Reed acquired the possession of the premises peaceably and lawfully from McClintock, the then legal owner. Holland was at the time a stranger to the transaction; the relation of landlord and tenant at no time existed between him and Reed; he appears never to have been in possession prior to the possession of Reed; his right accrued after the possession of Reed under McClintock. If a purchaser under a sheriff's sale and deed cannot maintain this action, wherefore should a purchaser at private sale be more highly favored?

The possession of Reed is the possession of his landlord, McClintock. Suppose that McClintock, the vendor, had been in actual possession of the premises at the time of the sale to Holland, and refused thereafter

to yield up the possession to Holland, could Holland have ousted him by this summary proceeding? I apprehend not. Upon what principle, then, shall Reed be subjected to a proceeding which would not lie against his landlord?

Shall the burden be cast upon him to defend against the title of Holland, between whom there is no privity? But there could be no investigation touching the title—the statute expressly forbids it. See the 26th section, which provides that "the merits of the title shall in no wise be enquired into, on any complaint which shall be exhibited by virtue of this act." How could Holland establish his right to the property without an investigation of his title derived from McClintock? Does the evidence of his title conform to the requirements of the law?—was the transaction a fair and *bona fide* one, compatible with the rules of law, and not obnoxious to the principles of equity? are questions which might arise on the trial, provided a door was opened to the investigation of title, and which the justice of the peace might be wholly incompetent to decide. Such could not have been in the contemplation of the framers of the act.

It may be proper here to remark, that the statute of Kentucky, upon which the adjudications of their court is based, differs from the statute of this State, and hence the decisions of the Supreme Court of that State cannot safely be relied upon in the construction of the foregoing clause of our statute.

From the foregoing views, the judgment of the Circuit Court ought to be affirmed, and the other Judges concurring, the same is affirmed.